**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman COURTNEY R. CANADA**
**United States Air Force**

**ACM S32298**

**20 October 2016**

Sentence adjudged 24 October 2014 by SPCM convened at Joint Base San Antonio – Randolph, Texas. Military Judge: Bradley A. Cleveland (arraignment) and Mark W. Milam.

Approved Sentence: Bad-conduct discharge and reduction to E-2.

Appellate Counsel for Appellant: Major Isaac C. Kennen.

Appellate Counsel for the United States: Major Mary Ellen Payne and Gerald R. Bruce, Esquire.

Before

MAYBERRY, J. BROWN, and BENNETT
Appellate Military Judges

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MAYBERRY, Senior Judge:

At a special court-martial composed of officer members, Appellant was convicted, contrary to her plea, of wrongful use of cocaine in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, and sentenced to a bad-conduct discharge and reduction to E-2. The convening authority approved the sentence as adjudged.

On appeal, Appellant raises 10 issues: (1) the evidence is legally and factually insufficient;[1] (2) the military judge's instruction allowing a permissive inference of knowing ingestion based on the presence of a metabolite of cocaine in Appellant's urine

---

[1] Appellant's error is characterized as one of factual sufficiency, but we analyzed the error for both legal and factual sufficiency.

sample was erroneous;[2] (3) the military judge erred in allowing the government's expert witness to testify that "assuming there was no contamination then you would have to assume [the cocaine] was taken…purposefully";[3] (4) the military judge erred in allowing trial counsel to voir dire the members regarding the use of the permissive inference; (5) the military judge erred in ruling that the drug testing report (DTR) was not testimonial hearsay and allowing the government's expert witness to testify; (6) the military judge erred in admitting hand-written notes in the DTR;[4] (7) the military judge's instruction on reasonable doubt was erroneous; (8) the trial counsel's closing argument was improper; (9) the non-unanimous verdict violates the Due Process Clause; and (10) post-trial processing delay.

*Background*

On 22 January 2014, Appellant provided a urine sample pursuant to an order generated by the Drug Demand Reduction Office on Joint-Base Fort Sam Houston, Texas. The sample was tested at the Air Force Drug Testing Laboratory (AFDTL) on Lackland Air Force Base, Texas. The results of that testing showed the presence of benzoylecgonine (BZE) in Appellant's urine at a level of 274 ng/mL. The Department of Defense (DoD) cutoff for BZE is 100 ng/mL. Appellant was charged with a single specification of wrongful use of cocaine between on or about 8 January 2014 and on or about 22 January 2014. The government's only evidence at trial consisted of testimony from witnesses involved in the collection of the urine sample Appellant provided on 22 January 2014 and a DTR introduced through the testimony of an expert in drug urinalysis testing, Dr. DT.

Additional facts necessary to resolve the assignments of error are included below.

*Legal and Factual Sufficiency—Permissive Inference*

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002); *see United States v. Cole*, 31 M.J. 270, 271 (C.M.A. 1990). Our assessment of legal and factual sufficiency is limited to the evidence presented at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this court is] convinced of the [Appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000).

---

[2] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).
[3] *Id.*
[4] *Id.*

The test for legal sufficiency requires courts to review the evidence in the light most favorable to the government. If any rational trier of fact could have found essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient. *Reed*, 51 M.J. at 41 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) and *Turner*, 25 M.J. 324 (C.M.A. 1987)); *see also United States v. Humphreys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

Appellant argues that use of the permissive inference should not have been allowed to prove the knowledge element in this case. She relies on *Cnty. Court v. Allen*, 442 U.S. 140 (1979), for the proposition that there must be "ample evidence" other than the permissive inference to sustain a conviction. Appellant also looks to *United States v. Ford*, 23 M.J. 331 (C.M.A. 1987), for the proposition that this court must conduct a case-specific analysis of the facts to determine whether the permissive inference was properly applied.

In *Ford*, decided nearly 30 years ago, our superior court noted that "evidence of urinalysis tests, their results, and expert testimony explaining them is sufficient to show beyond a reasonable doubt that an accused used marihuana." 23 M.J. at 332. The court recognized that "military law for over 35 years has provided that a permissive inference of wrongfulness may be drawn from such a circumstantial showing of marihuana use." *Id.* Further, such an inference "may still be drawn where the defense evidence contrary to the *inference* may be reasonably disbelieved by the factfinder." *Id.* at 334. (emphasis in the original).

The Court of Appeals for the Armed Forces (CAAF) more recently encapsulated the proper use of the inference as follows:

> Whether to draw an inference of wrongfulness is a question to be decided by the factfinder using the standard of reasonable doubt. It may be drawn where no contrary evidence is admitted. However, if the prosecution fails to persuade the factfinder beyond a reasonable doubt that this inference should be drawn, a finding of not guilty is required. Similarly, the inference of wrongfulness may be drawn where contrary evidence is admitted. However, if the prosecution fails to persuade the factfinder beyond a reasonable doubt that this contrary evidence should be disbelieved or that the inference should be drawn, a finding of not guilty is required.

*United States v. Bond*, 46 M.J. 86, 90 (C.A.A.F. 1997).

The simple fact that defense has raised an innocent or unknowing ingestion defense does not require the government to rebut such a defense in order for members to find Appellant guilty. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Appellant contends that the facts of this case do not support the permissive inference of a "knowing" use. Specifically, she notes that the government's expert witness, Dr. DT, testified that, based on the scientific evidence, he could not say when Appellant used cocaine, how much was used, whether the user would have felt any physiologic or psychological effects, or whether the ingestion was knowing. Additionally, Appellant relies on Dr. DT's acknowledgement that another metabolite, ecgonine methyl ester (EME), is the metabolite of cocaine that proves cocaine has actually been enzymatically processed through a human's body.[5] Consequently, Appellant argues that without more evidence, the results of the drug testing alone should not be sufficient evidence to find the element of *knowing* use beyond a reasonable doubt.

Dr. DT's testimony was comprehensive, providing evidence of how cocaine is metabolized in the body, how long cocaine and the metabolite BZE are typically retained in the body, how the drug testing process works at AFDTL, and a summary of the scientific results of Appellant's specimen tests. In addition to his testimony that the scientific results could not reveal when cocaine was used, how much was used, or whether the user experienced any effects, Dr. DT testified that a recreational dose of cocaine (40-50 mg) could stay in the body for 1.5 to 2 days, with the literature suggesting the maximum detection window for a recreational dose to be 2 to 3 days. He ultimately concluded that based on his assessment that the tests on Appellant's sample were valid and done in accordance with laboratory procedures, Appellant's nanogram level was consistent with a recreational, knowing use of cocaine between 1.5 and 3 days prior to providing a urine sample.

The cross-examination of Dr. DT elicited a number of possibilities, other than knowing ingestion, for how Appellant's urine sample could have tested positive for 274 ng/mL of BZE, including that lab technicians and others in the chain of custody could have either accidentally or intentionally placed BZE[6] or cocaine into Appellant's sample.[7] While BZE was available in the lab, there was no evidence elicited that cocaine was

---

[5] Dr. DT testified that, to his knowledge, no laboratory would use ecgonine methyl ester (EME) to test for cocaine, unless they were asked to look for that metabolite.

[6] However, based on the amount of urine Appellant provided, someone would have had to put at least 3000ng of benzoylecgonine (BZE) in Appellant's urine sample in order for the sample to test positive for BZE above the Department of Defense (DoD) cutoff.

[7] Appellant's *Grostefon* assignment of error VIII asserts that Dr. DT impermissibly testified that, assuming there was no contamination, you would then have to assume it was taken purposefully. This was in response to a hypothetical question raised by trial defense counsel asking the expert to commit to the fact that even if there was no contamination, actual ingestion of cocaine, or laboratory processing errors, the test result could not determine where it was ingested. This question challenged the government's evidence as to jurisdiction over the charge, not the remaining element of the offense. As such, we find this error to be without merit.

available to anyone at the lab. Dr. DT conceded that his opinion was necessarily dependent on his assumption that everything was done correctly at the laboratory and there was no contamination of the sample. The military judge limited trial defense counsel's efforts to challenge the reliability of the actions of the technicians and non-conforming events at the lab to one month before or after Appellant's test.

At the conclusion of the government's case, trial defense counsel made a motion for a finding of not guilty pursuant to Rule for Courts-Martial (R.C.M.) 917 based, in part, on the government's failure to present evidence that ingestion, if there was any, was knowing. Trial counsel countered this allegation with the instruction regarding permissive inference, arguing that because the DTR showed the presence of BZE, the permissive inference met the standard. The government also cited *United States v. Faile*, ACM S32098 (A.F. Ct. Crim. App. 7 November 2013) (unpub. op.), *pet. denied*, 73 M.J. 294 (C.A.A.F. 2014). With regard to the permissive inference instruction, trial defense counsel argued that because BZE could be present in Appellant's urine sample without having been processed in the body and there was no other evidence offered by the prosecution, use of the permissive inference should not be permitted. The military judge ruled that he, like the court in *Faile,* was not persuaded to ignore precedent of our superior court that allows the prosecution to rely on a permissive inference.

Trial defense counsel requested the military judge reconsider his ruling as to the knowing use presumption, distinguishing *Faile* because it involved multiple positive urinalyses, it relied on *United States v. Harper*, 22 M.J. 157, 162 (C.M.A. 1986)*,* which also involved multiple positive urinalyses, and because the defense affirmatively presented evidence in *Faile.* The military judge denied the motion for reconsideration. Immediately after the military judge's ruling on the R.C.M. 917 motion, the defense rested, putting on no evidence.

In *Allen*, the United States Supreme Court stated that "inferences and presumptions are a staple of our adversary system of factfinding." *Allen*, 442 U.S. at 157. The Court went on to state that "[a]s long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilty, it need only satisfy the test described in *Leary [v. United States*, 395 U.S. 6 (1969)]." *Id.* at 160. Applying the *Leary* test to the facts before us, we look to see if there is a sufficient logical link between the evidence that BZE was in Appellant's urine and her knowing use of cocaine. Thus, if, under the circumstances of this case, we find that "it can be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact," then the permissive inference was appropriate and permissible. *Leary*, 395 U.S. at 36. Applying this test, we find that there is a sufficient logical link between the evidence and the inference.

Furthermore, the members were not required to make this inference. The military judge gave the following instruction:

The accused may not be convicted of the use of a controlled substance if the accused did not know she was actually using the substance. The accused's use of the controlled substance must be knowing and conscious. For example, if a person places a controlled substance into the accused's drink, food or cigarette without the accused becoming aware of the substance presence, then the accused's use was not knowing and conscious. It is not necessary that the accused was aware of the exact identity of the contraband substance. The knowledge requirement is satisfied if the accused knew the substance was prohibited. Similarly, if the accused believes to be a contraband substance, such as heroine (sic) when in fact it was cocaine, the accused had sufficient knowledge.
…

In this case, *evidence has been introduced that BZE, the metabolite for cocaine was present in the accused's urine* on 22 January 2014. *Based upon this evidence you may permissibly infer that the accused ingested cocaine and did so knowingly; however, the drawing of this inference is not required* and the weight and the effect of this evidence, if any, will depend upon all the facts and circumstances as well as the other evidence in this case. I have instructed you that you must be satisfied beyond a reasonable doubt that the accused knowingly ingested cocaine during the charged timeframe. This knowledge, like any other fact, may be proven by circumstantial evidence. In deciding this issue, you must consider all relevant facts and circumstances. (Emphasis added.)

In the case before us, the permissive inference was pervasive throughout the trial. Trial counsel raised the permissive inference with members during voir dire, as will be discussed below, and returned to it to argue against the motion for a finding of not guilty pursuant to R.C.M. 917. The permissive inference was raised again in closing. Having reviewed the entire record, it is clear that the government relied heavily on the permissive inference throughout their case. Nevertheless, the members were also required to consider the testimony elicited during the cross-examination of Dr. DT to determine whether the government proved the element of knowing ingestion beyond a reasonable doubt. The instruction correctly indicated that the members were not required to draw the inference, but, if they did, doing so was not erroneous under the law.

Finally, the evidence regarding the collection of the specimen, along with the results of the drug-testing process and the expert testimony of Dr. DT, provided sufficient

additional evidence for the members to find that Appellant knowingly used cocaine beyond a reasonable doubt. The members were not persuaded by Appellant's alternative theories as to how either cocaine or BZE could have contaminated her specimen. Together with the permissive inference, the other evidence available to the members was factually sufficient to support the conviction beyond a reasonable doubt.

We find that there is sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that the Appellant is guilty of wrongful use of cocaine, and that the evidence is, therefore, legally sufficient. Furthermore, weighing all the evidence admitted at trial and mindful of the fact that we did not see or hear the witnesses, this court is convinced beyond a reasonable doubt that the Appellant is guilty of the offense.[8]

*Permissive Inference Discussion during Voir Dire & Closing Argument[9]*

A military judge is given wide discretion in determining the nature and scope of voir dire. R.C.M. 912(d), Discussion; *United States v. Williams*, 44 M.J. 482, 485 (C.A.A.F. 1996). When reviewing issues involving a military judge's scope and content of voir dire, this court should reverse only when a clear abuse of discretion, prejudicial to a defendant, is shown. *Id*. Improper argument is a question of law that is reviewed de novo. *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011). In the absence of objection by the defense at trial, we review for plain error. *See United States v. Nieto,* 66 M.J. 146, 147 (C.A.A.F. 2008) (citing *United States v. Moran*, 65 M.J. 178, 181 (C.A.A.F. 2007) and *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F 2007)). In order to prevail under a plain error analysis, an appellant must demonstrate that: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id*.

Appellant asserts that the military judge improperly allowed trial counsel to "elicit a promise" that they would not require the government to present more than the circumstantial evidence that Appellant's urine contained the metabolite of cocaine. Appellant characterizes trial counsel's question regarding the permissive inference as a misstatement of the law. Appellant relies on *United States v. Brewer*, 61 M.J. 425, 430 (C.A.A.F. 2005), to assert that in order for this court to determine the propriety of a voir dire question concerning the permissive inference, we must consider the extent to which the question was faithful to the law regarding permissive inferences.

Appellant asserts that trial counsel's reference to the reasonable doubt instruction during closing argument misstated the law by requiring the members to convict if they believed Dr. DT's testimony concerning the testing process and results of that process. Appellant relies on *United States v Vargas*, 583 F.2d 380, 386 (7th Cir. 1978) for the

---

[8] The analysis of this issue also resolves Appellant's assignment of error VII raised pursuant to *Grostefon*.
[9] For ease, we re-ordered and address the issues together.

proposition that a prosecutor's misstatements of law in closing arguments can be grounds for reversal.

Trial counsel's voir dire questions regarding direct and circumstantial evidence were, at times, confusing, particularly when she attempted to differentiate between direct and circumstantial evidence. Eventually, trial counsel asked whether the members would be able to consider circumstantial evidence by itself to convict Appellant, and then, whether anyone would require direct evidence such as a photograph, video, or something of that nature in order to convict. One panel member asked if the result of a urinalysis was considered direct evidence. Trial counsel started to respond to the question but the military judge intervened, correctly instructing the members that direct evidence was not required for a conviction. The military judge further indicated he would instruct them on what constituted direct and circumstantial evidence. He then asked them if they would follow his instructions. They all stated they would.

Trial counsel then moved on to question the members regarding the burden of proof, stating that the permissive inference "lets you conclude that the accused is guilty based on just one piece of circumstantial evidence, such as the accused's positive drug test." Trial counsel then asked the members if anyone thought that legal principle was unfair. All members provided a negative response. Defense counsel did not object to the question at the time. However, as noted in our opinion on Appellant's first issue, the military judge later correctly instructed the members as to the permissive inference, stating that they were not required to draw the inference, and that the members had to consider all facts and circumstances and be convinced beyond a reasonable doubt that Appellant knowingly used cocaine.

In closing argument, trial counsel stated:

> Based on what the government has shown you, that is that we've shown you chain of custody - - that the specimen was from the accused. We've showed you that the specimen tested positive for cocaine. And we brought Dr. [DT] in here to confirm that, to tell you that the metabolite was present in her urine. That alone, with that evidence, you may find that she, in fact, knew that she used . . . [T]he military judge just instructed you on this but I just want to focus on one term on there, that if based on your consideration of the evidence, you are firmly convinced - - which you are at this point - - that the accused is guilty, you must find her guilty. . . [The AFDTL] provided you the [DTR] that the metabolite for cocaine was present in the accused's urine. Now there's one final step that's left here. That's that you need to find the accused guilty of wrongful use of cocaine.

The *Brewer* case addressed whether the permissive inference instruction provided by the judge may have caused a reasonable member to believe that there was a mandatory presumption rather than a permissive inference. It did not address voir dire. Although the holding in *Brewer* can be distinguished on that basis, our superior court did address the danger associated with the possible confusion between permissive inference and mandatory presumption. Quoting *Sandstrom v. Montana*, 442 U.S. 510, 514 (1979), a case also dealing with jury instructions, CAAF noted that the nature of the presumption "requires careful attention to the words actually spoken to the jury . . . for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Brewer* at 430.

We find that trial counsel's voir dire addressing the use of the permissive inference was at best an incomplete statement of the law. Her specific question to the members was whether they found her characterization of the burden *unfair*. They all agreed it was not. Had she properly characterized what the burden was, her question would not give us cause to address any possible error. The defense counsel did not object, and at the time, the military judge did not take any corrective action. Additionally, trial counsel's closing argument relies almost singularly on the fact that the DTR established the metabolite for cocaine was present in the accused's urine to prove guilt. Again, there was no objection by defense counsel.

Applying the plain error standard, trial counsel's oversimplification of the evidence necessary to establish proof beyond a reasonable doubt was not plain error. Even if it was plain error, we find it did not result in material prejudice to Appellant's substantial rights. The military judge provided accurate statements of the law during voir dire and again in his instructions to the members regarding the proper employment of the permissive inference instruction as well as the true burden of proof required to support a conviction. Absent evidence to the contrary, this court may presume that members follow a military judge's instructions. *See United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000). Accordingly, no relief is required or warranted.

*Military Judge's Admission of Expert Testimony and Drug Testing Report*

Whether evidence is testimonial hearsay is a question of law reviewed de novo. *United States v. Katso*, 74 M.J. 273, 278 (C.A.A.F. 2015). This court reviews the military judge's ruling on a motion to exclude evidence for an abuse of discretion, considering the evidence in the light most favorable to the prevailing party. *Id*. Under this standard, the military judge's findings of fact are upheld unless they are clearly erroneous or unsupported by the record. A military judge abuses his discretion when (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) incorrect legal principles were used; or (3) his application of the correct legal principles to the facts

is clearly unreasonable.  *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

*a. Expert Testimony of Dr. DT*

The defense motion to preclude Dr. DT from testifying was based on the following: he was not present for any of the testing of Appellant's urinalysis specimen; he did not conduct a visual examination of the evidence; he did not run any of the tests or analysis; and he did not observe any of the technicians perform any of the tests on Appellant's sample.  His only role was as the Laboratory Certifying Official.

For the purpose of the motion, the parties stipulated to the following:

1.  On January 22, 2014, [Appellant] provided a urinalysis pursuant to a random urinalysis test.  On 27 Jan 2014, the sample was sent to the Air Force Drug Testing Lab (AFDTL) for analysis.  The sample was received at AFDTL the same day and released by WM for "screen batch set up and aliquotting" on 3 February 2014.  Starting on 3 February and lasting for several days, the sample was released, stored, tested, manipulated, destroyed, and reviewed by a number of AFDTL employees . . . .

2.  On 11 February 2014, AFTDL notified Mr. HP at the JBSA-Ft Sam Houston Drug Demand Reduction Program that Appellant's specimen allegedly tested positive for cocaine.  That same day, the results were submitted to the Medical Review Officer, Dr. KW, an Occupational Medicine Physician, for review.  Dr. KW completed his review the same day.

3.  On 12 February 2014, the DDRP Manager, Mr. JK, notified AFOSI of the positive result in a memorandum.  That same memorandum indicates that [Appellant's] command and 502 ABW/JA were also notified.

4.  On 18 February 2014, 502 FSG/JA requested the DTR, Specimen Bottle, and Aliquots from the AFDTL in anticipation of preferral of court-martial charges.  On 19 February 2014, the AFDTL result reporting assistant, Ms. AL, produced an additional memorandum for 502 FSG/JA.  The memorandum, along with the attached report, indicated the results of the positive urinalysis, the method of detection, and the DoD cutoff levels.  The attachments to this memorandum included

the DD Form 2624 along with the required AFDTL standard drug report and documents.

5. One charge and one specification of wrongful use of cocaine was preferred on 20 March 2014. The charge was referred on 25 March 2014 and served on [Appellant] on 26 March 2014.

6. On 29 September 2014 the government identified Dr. DT as its expert witness from AFDTL. Dr. DT was not present for the testing of [Appellant's] urinalysis specimen. Furthermore, Dr. DT did not conduct a visual examination of the evidence, he did not run any of the tests or analyses, and he did not observe any of the AFDTL technicians perform any of the tests or analyses on this particular sample. His only role was that of Laboratory Certifying Official.

At the motion hearing, Dr. DT testified that approximately .5% of the 400,000 to 500,000 tests performed at AFDTL generate a presumptive positive for any drug; after a presumptive positive result is obtained, samples are batched together for GC/MS testing based upon the drug detected; 80% of the positive GC/MS test results do not go to court; technicians do not know who the sample belongs to or what happens to a positive test; and the test results and reports are generated and printed automatically by the computer—the process is "computer driven, personnel empowered."

The military judge's findings of fact, conclusions of law, and ruling on the motion to exclude the DTR and the testimony of Dr. DT comprise 10 pages in the transcript. His findings of fact contain the information previously stipulated to by the parties as well as additional facts, including the following:

> [D]uring testimony for this motion, Dr. [DT] testified that about only .5 percent of the samples tested at AFDTL are presumptively positive. Although Dr. [DT] did not know the percentage of the presumptive positives that were for cocaine, his guess was about five to ten percent. Dr. [DT] also testified that the laboratory technicians testing the urine samples do not know what the test results would be used for. Dr. [DT] stated he, himself, did not know for what purpose positive results would necessarily be used. Finally, he stated the laboratory technicians do not know anything about a particular sample after completing their process with it.

His conclusions of law addressed the application of the Confrontation Clause of the Sixth Amendment, Mil. R. Evid. 803, and case law. Ultimately, he concluded:

[W]hile the defense wants this court to carve out an exception for the drug cocaine to higher court rulings regarding the DTR and what is considered testimonial in it, I am unwilling to do so. Dr. [DT] was clear that the technicians are performing their jobs without specific knowledge of how the positive test results will be used. It matters not to them what outcome will occur because of a positive result, no matter what drug. By analogy, and without intending to impugn or degrade, the technicians are similar to assembly-line workers, each doing their individual parts to get a finished product. For what the laboratory technicians do, that product is to get a valid result for the entity or person submitting the samples. Therefore, their chain of custody and internal review worksheets are non-testimonial, and they are admissible.

### b. Admission of Drug Testing Report

Trial defense counsel moved to exclude admission of the DTR generated from the drug testing laboratory, claiming it should be excluded until the United States made available for cross-examination all laboratory personnel involved in the testing of Appellant's urine sample. Trial defense counsel also moved to exclude Dr. DT, the government's expert, from testifying because he did not conduct the drug analysis testing himself or even certify the testing done on Appellant's sample.

The defense theory to exclude the DTR was based on their assertion that a presumptive positive for cocaine using the immunoassay screen would more likely than not end up resulting in punitive action against the person who provided the sample due to the fact that the metabolite that is identified in the test is not produced by any other substance. The defense counsel advocated that because the follow-on testing would be done for the purpose of producing evidence, all of the confirmatory drug testing results were testimonial in nature. Defense counsel acknowledged our superior court's opinions but nevertheless requested the military judge—and now this court—carve out an exception for cases where the immunoassay test results were presumptively positive for cocaine.

The DTR offered in this case had been modified in accordance with case law allowing for the admission of a DTR.[10] *See Crawford v. Washington*, 541 U.S. 36 (2004); *Bullcoming v. New Mexico*, 564 U.S. 647 (2011); *Katso*, 74 M.J. at 273; *United States v.*

---

[10] Columns G and H of DD Form 2624 were redacted; both the cover memo and affidavits had been removed; and information regarding samples of other tested individuals were redacted. The cover memo was attached to the government's motion for the purpose of establishing that the documents contained within the Drug Testing Report (DTR) were generated in the course of regularly conducted business and that Dr. DT certified the report in his capacity as a Lab Certifying Official.

*Tearman*, 72 M.J. 54 (C.A.A.F. 2013); *United States v. Sweeney*, 70 M.J. 296 (C.A.A.F. 2011); *United States v. Blazier (Blazier I)*, 68 M.J. 439 (C.A.A.F. 2010); *United States v. Blazier (Blazier II)*, 69 M.J. 218 (C.A.A.F. 2010); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *United States v. Magyari*, 63 M.J. 123 (C.A.A.F. 2006).

During the government's case in chief, Dr. DT testified and explained that he was a Laboratory Certifying Official at the drug testing laboratory where Appellant's sample was tested. In that capacity, he reviewed data and was familiar with all laboratory operating procedures, as well as quality assurance and quality control programs. Dr. DT testified that the types of tests used by the drug testing laboratory "are used throughout the world for all kinds of testing as well as forensic testing, medical testing, research, everything." He further stated that the same protocols are used by all laboratories, both inside and outside of the Department of Defense.

Additionally, Dr. DT testified as to how Prosecution Exhibit 1, the DTR, was prepared. He said that all of the documents except for the chain of custody documents were generated by the computer. Dr. DT explained that the information found within the DTR was the type of information he would regularly review as a Laboratory Certifying Official. Dr. DT reviewed and analyzed the raw data from the entire DTR in the presence of the members.

In accordance with the military judge's ruling, Dr. DT did not repeat any redacted testimonial hearsay he may have reviewed. As to the three handwritten annotations contained on pages 10 and 12 of the DTR, these were required modifications to the computer print-out based upon automated quality control checks necessitating machine calibrations. The computer-generated reports documenting these checks were included in the DTR. These annotations do not constitute testimonial hearsay and Dr. DT was permitted to testify regarding these annotations.

The military judge denied the defense motion to exclude the entire DTR. He held that the government's redacted version of the DTR, as seen in Prosecution Exhibit 1 for Identification, was admissible subject to a proper foundation. Furthermore, he ruled Dr. DT, the anticipated government expert witness in Pharmacology, Toxicology, and AFDTL procedures, if qualified as such an expert, could discuss the DTR. However, he ruled that the government could not elicit testimony reciting excluded testimonial evidence to the members. The military judge did not abuse his discretion in admitting the DTR or allowing Dr. DT to testify. His findings of fact were not clearly erroneous or unsupported by the record. He applied the correct legal principles, and his application of the law to the facts was not clearly unreasonable. [11]

---

[11] The analysis of this issue also resolves Appellant's assignments of error VIII and IX raised pursuant to *Grostefon*.

*Reasonable Doubt Instruction*

After the court was assembled, and again prior to deliberations, the military judge instructed the members of the following with respect to proof beyond a reasonable doubt:

> A "reasonable doubt" is a conscientious doubt based upon reason and common sense, and arising from the state of evidence. Some of you may have served as jurors in civil cases, or as members of an administrative board[], where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the accused's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of any offense charged, you must find her guilty. If, on the other hand, you think there is a real possibility that the accused is not guilty, you must give her the benefit of the doubt and find her not guilty.

Although trial defense counsel did not object to this instruction, Appellant now argues that this instruction violates Supreme Court precedent prohibiting a trial judge from "directing the jury to come forward with a [guilty verdict], regardless of how overwhelmingly the evidence may point in that direction." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73 (1977). Moreover, Appellant now asserts that trial defense counsel was not required to lodge an objection given the fact that the instructions were so plainly in violation of controlling Supreme Court precedent and because the instruction in question concern a topic of fundamental importance to any criminal trial—the burden placed upon the government.

We review de novo the military judge's instructions to ensure that he correctly addressed the issues raised by the evidence. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010); *United States v. Thomas*, 11 M.J. 315, 317 (C.M.A. 1981). Where, as here, trial defense counsel made no challenge to the instruction now contested on appeal, Appellant forfeits the objection in the absence of plain error.[12] R.C.M. 920(f). If we find error, we must determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011).

---

[12] Although we recognize that the rule speaks of "waiver," this is, in fact, forfeiture. *United States v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).

The language used by the military judge in Appellant's case is—and has been for many years—an accepted reasonable doubt instruction used in Air Force courts-martial. *See United States v. Sanchez*, 50 M.J. 506, 510–11 (A.F. Ct. Crim. App. 1999). It was also offered by our superior court as a suggested instruction. *See United States v. Meeks*, 41 M.J. 150, 157 n.2 (C.M.A. 1994) (citing Federal Judicial Center, Pattern Criminal Jury Instructions at 17–18 (instruction 21) (1987) ("If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty."). *Sanchez* and *Meeks* were decided after the authorities cited in Appellant's brief. No relief is warranted.

*Prosecutor's Closing Argument*

Appellant asserts four areas of trial counsel's finding's argument (including the visual aids used) were improper. Having already addressed one of these in our analysis of the permissive inference, the remaining three are: (1) trial counsel improperly vouched for drug testing laboratory personnel and the urinalysis results; (2) trial counsel made disparaging comments about trial defense counsel; and (3) trial counsel argued facts not in evidence. As Appellant made no objection at trial to any of these arguments, this court reviews trial counsel's argument for plain error.

Prosecutorial misconduct occurs when trial counsel "oversteps the bounds of that propriety and fairness which should characterize such an officer in the prosecution of a criminal offense." *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005). A prosecutor "may strike hard blows" but is "not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). Improper argument is thus prosecutorial misconduct if it is counter to the *Berger* articulation of the role of a prosecutor. *Fletcher*, 62 M.J. at 179.

Appellant asserts that trial counsel's closing argument improperly vouched for the urinalysis results, lab procedures, and lab personnel. Specifically, Appellant claims that trial counsel's speculation as to defense counsel's theory—"intentional tampering, confusion of specimens, or inadvertent contamination"—runs counter to common sense, as well as the visual aid stating "no contamination or tampering" and the argument "that if something had gone wrong, you would have heard it from Dr. DT" "vouched" for the AFDTL process by asking the members to use their common sense to presume that there was no tampering or contamination. As our superior court stated in *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000), argument by trial counsel must be viewed within the context of the entire court-martial: "our inquiry should not be on words in isolation but on the argument as 'viewed in context.'" In the case before us, trial counsel's argument did not contain personal views, but amounted to fair comments on the evidence presented to

include the various hypothetical possibilities regarding contamination raised during the cross-examination of Dr. DT.

Appellant next asserts that trial counsel's characterization of the defense theory as running "counter to logic and common sense" constitutes disparaging comments against defense counsel. This argument was not personal; it was nothing more than trial counsel's comment on the evidence and theory proffered by the defense's tactics and strategy during the trial.

Lastly, Appellant asserts that trial counsel argued facts not in evidence when she stated that the government "had brought each and every person involved in the [drug testing] process [to testify]." Again, our superior court's ruling in *Baer* is determinative here: it is improper to "surgically carve" out a portion of the argument with no regard to its context. *Baer* at 238. There is no doubt that every technician from the drug testing laboratory did not testify, and the law does not require them to testify. However, all of the witnesses involved in the chain of custody—from selection, to test, to delivery of the specimen to the laboratory—did testify. Under the law, trial counsel's exuberance did not amount to improper argument regarding required AFDTL witnesses.

Having reviewed the claims by Appellant and the content of trial counsel's closing argument, we find no error that materially prejudiced Appellant.

*Composition of the Court-Martial*

The constitutionality of an act of Congress is a question of law that appellate courts review de novo. *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012).

Appellant argues that having a three-member panel that is not required to produce a unanimous verdict is unconstitutional. In doing so, she acknowledges that the recent decision by this court of *United States v. Spear*, ACM 38537 (A.F. Ct. Crim. App. 30 July 2015) (unpub. op.), *aff'd without opinion*, 75 M.J. 50 (C.A.A.F. 2015), addressed this very issue and was decided contrary to Appellant's position. Appellant seeks to differentiate this case from *Spear* because this case involved a permissive inference.

Appellant cites no case law supporting her position that this case should be treated differently solely because it involved the employment of a permissive inference. Rather, she hypothesizes that a requirement for unanimity *could* have resulted in an acquittal if even one of the members in Appellant's trial was disinclined to employ the permissive inference, even if the government's evidence was sufficient to justify employment, because drawing the permissive inference is entirely discretionary.

As this court opined in *Spear*, "[j]udicial deference is 'at its apogee' when an appellant is challenging the authority of Congress to govern military affairs. It is the

appellant's heavy burden to demonstrate that Congress' determinations about panel size and unanimity should not be followed." *Spear*, unpub. op. at 5 (citations omitted). We find the analysis of *Spear* persuasive. As in *Spear*, Appellant here has failed to meet her heavy burden to demonstrate that Congress' determinations should not be followed.

*Post-Trial Processing*

We also consider two periods of post-trial processing delays. First, the delay between completion of trial and convening authority action, and also the delay between docketing at this court and issuance of this opinion (raised by Appellant). Under *United States v. Moreno*, courts apply a presumption of unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial." 63 M.J. 129, 142 (C.A.A.F. 2006). There is also a presumption of unreasonable delay when the time from docketing at this court to issuance of the decision exceeds 18 months. *Id.*

In conducting this review, we assess the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay, (2) the reasons for the delay, (3) Appellant's assertion of the right to timely review and appeal, and (4) prejudice. *Id.* There is a presumption of unreasonable appellate delay when a Court of Criminal Appeals does not render a decision within 18 months of docketing. *Id.* at 142.

If the appellate delay in a given case does not rise to the level of a due process violation, this court may nonetheless exercise its broad authority under Article 66(c), UCMJ, to grant sentence relief even in the absence of a showing of material prejudice. *United States v. Tardif*, 57 M.J. 224. In *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006), our superior court held that a service court may grant relief even when the delay was not "most extraordinary." CAAF held, "The essential inquiry remains appropriateness in light of all circumstances, and no single predicate criteria of 'most extraordinary' should be erected to foreclose application of Article 66(c), UCMJ, consideration or relief." *Id.*

This court set out a non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). Those factors include how long the delay exceeded appellate review standards, the reasons noted by the government for the delay, whether the government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or the institution, the goals of justice and good order and discipline, and, finally, whether the court can provide any meaningful relief given the passage of time. *Id.* No single factor is dispositive, and we may consider other factors as appropriate. *Id.*

*a. Trial to Convening Authority Action—126 days.*

Trial concluded on 24 October 2014. The record of trial was completed on 10 February 2015. Appellant provided clemency matters pursuant to R.C.M. 1105 on 24 February 2015. The convening authority took action on 26 February 2015. As such, 126 days elapsed between the completion of trial and the convening authority's action. Appellant does not assert any prejudice, and we find Appellant suffered no prejudice from the delay that would authorize *Moreno* relief.

Having found no prejudice, we next consider granting relief under *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). Under Article 66(c), UCMJ. Applying the standards in *Gay*, we conclude Appellant is not entitled to any *Tardif* relief. The relatively minor nature of the post-trial processing delay, given the factors involved, does not rise to the level which would adversely affect the public's perception of the fairness and integrity of the military justice system, and thus it is not necessary to vindicate Appellant's right to timely post-trial processing in this case.

*b. Docketing to Opinion*

This case was docketed with this court on 23 March 2015. Appellant filed her assignments of error on 16 January 2016. On 9 March 2016, almost 12 months after the case was docketed, the government filed a Motion to remand the case for new post-trial processing after discovering that the first arraignment had been omitted from the record of trial. Appellant opposed the motion, instead requesting the court order the government to file a motion to attach the missing pages. On 14 March 2016, this court ordered the government to obtain a certificate of correction from the military judge and to file a motion to attach this missing portion of the transcript. On 5 April 2016, the government filed a motion, but the certificate of correction was not signed by the presiding judge in accordance with R.C.M. 1104(d). On 13 April 2016, the government submitted, and this court granted, a Motion to Attach in compliance with R.C.M. 1104(d). On 29 September 2016, Appellant filed a supplemental assignment of error requesting the findings and sentence be set aside and the charge be dismissed with prejudice due to post trial processing delay.

We decline to grant sentence relief in this case. Having analyzed the four *Barker* factors, we find the delay in rendering this opinion does not constitute a due process violation. We also find that *Tardif* relief is not appropriate in this case. Therefore, Appellant is not entitled to relief based on the fact that more than 18 months elapsed after docketing until today's opinion.

*Additional Issue: Record of Trial Errors*

The Personal Data Sheet (PDS) attached to the Staff Judge Advocate Recommendation (SJAR) is erroneous. The PDS admitted at trial, Prosecution Exhibit 17, is correct. However, the PDS attached to the SJAR had been modified to reflect the reduction in rank and the corresponding reduction in basic pay. Appellant did not suffer any forfeitures as part of the adjudged or approved sentence, so we find the error to be harmless. Additionally, neither Appellant nor Appellant's trial or appellate counsel raised the issue.

The original arraignment pages are included in the record of trial but only as an attachment to the government's motion, which was addressed above. We note that the missing pages have not been properly incorporated into the original record of trial and the date of the original arraignment is not reflected on the cover sheets of each volume of the record of trial.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court